**Phillip J. WOLF, Plaintiff,**

v.

**J.I. CASE COMPANY and Tenneco, Inc., Defendants.**

**No. 84–C–1600.**

United States District Court,
E.D. Wisconsin.

Sept. 17, 1985.

the duty remains on the ALJ to develop the facts   fully and fairly.")

Sutton & Kelly by Walter F. Kelly, Milwaukee, Wis., for plaintiff.

Frisch, Dudek & Slattery, Ltd. by Dennis M. Grzezinski and D. Sean O'Lochlayne, Milwaukee, Wis., for defendants.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

The plaintiff, Philip Wolf, brings this action under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*, and the statutory and common law of Wisconsin alleging that he was terminated from his employment with the defendants, J.I. Case Company (Case) and its parent corporation Tenneco, Inc., because of his age. The defendants have filed a motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(1) and (6), Federal Rules of Civil Procedure. In response to the defendants' motion, the plaintiff has moved to amend his complaint, pursuant to Rule 15, Federal Rules of Civil Procedure.

Rule 12(b) provides that a Rule 12(b)(6) motion to dismiss for failure to state a claim will be converted automatically into a motion for summary judgment if the court considers matters outside the pleadings. Both sides in the present action have submitted affidavits regarding the plaintiff's ADEA termination claim. The plaintiff, in fact, specifically requests that the court treat the motion to dismiss as a motion for summary judgment. The court will consider the affidavits submitted by the parties and, accordingly, will treat the motion to dismiss the ADEA termination claim as a motion for summary judgment on this claim. So denominated, the motion will be granted.

Insofar as the defendants seek dismissal of the plaintiff's ADEA retaliation claim, the defendants' motion will be treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim; it will be denied.

The defendants' challenge to the plaintiff's state law claims would appear more properly to be characterized as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1); such motion will be denied. Finally, the plaintiff's motion to amend his complaint will be granted.

## I. BACKGROUND

The plaintiff, a United States citizen residing in Paris, France, initially was hired by Case in 1962 to manage its French operation, Case France, and to oversee its European operations. In 1965, the plaintiff was elected vice-president of defendant Case charged with full responsibility for supervising all of its European operations. In 1974, the executive and operating responsibilities for Case France, previously assigned to the plaintiff, were transferred to another employee. The plaintiff retained the title of president of Case France and performed public relations duties and served as an organizational liaison from April 1974 until the date of his alleged termination, January 31, 1983. At the time of his termination, the plaintiff was 65 years of age.

The plaintiff contends that throughout 1982, officers of the defendants attempted to persuade the plaintiff to retire upon reaching the age of 65, December 20, 1982. He further asserts that the defendants terminated the plaintiff's employment, effective January 31, 1983, because he had reached the age of 65. Such action, the plaintiff claims, constitutes willful and intentional age discrimination in violation of the ADEA and the Wisconsin Fair Employment Act (FEA), Wis.Stat. § 111.32 *et seq.*

The plaintiff also alleges that in response to his resistance to the defendants' attempts to force him to retire and because he filed charges of discrimination with the United States Equal Employment Opportunity Commission (EEOC) and the Wisconsin Equal Rights division, the defendants took retaliatory action against him beginning in January 1983. The plaintiff charges that the alleged retaliatory action violates the ADEA and the FEA.

In addition, the plaintiff asserts that the defendants violated their contractual obligation to provide the plaintiff with severance pay of $91,000.00 upon his termination. Such action, according to the plaintiff, constituted a bad faith breach of contract and a deprivation of reasonable promissory reliance rights.

The plaintiff seeks compensatory, liquidated, and punitive damages, as well as his costs and attorney fees.

## II. ADEA TERMINATION CLAIM

The defendants assert that the ADEA is not applicable to this case because the plaintiff was employed abroad at the time he was allegedly terminated because of his age. As previously noted, the court will treat the defendants' motion to dismiss the ADEA termination claim as a summary judgment motion.

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden rests with the moving party to establish that no genuine issues of material fact exist. *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983). A fact is material if it affects the outcome of the litigation and necessitates a trial to resolve the parties' conflicting versions of the truth. *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir.1984).

Any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). A court will accept as true, however, those facts in the movant's affidavits which are uncontroverted. *Wang v. Lake Maxinhall Estates, Inc.*, 531 F.2d 832 (7th Cir.1976).

### A. Applicability of Unamended ADEA

The Court of Appeals for the Seventh Circuit recently held that the ADEA, in its pre-1984 amendment form, does not apply to Americans employed abroad by American companies or their subsidiaries. An exception is made when it is necessary to prevent a transparent evasion of the Act, as where an employer transfers an employee abroad for a short period of time for the purpose of avoiding the Act's coverage. *Pfeiffer v. Wm. Wrigley Jr. Co.*, 755 F.2d 554 (7th Cir.1985). No transparent evasion of the ADEA is suggested in the present case. The holding in *Pfeiffer* is consistent with the decisions of other federal appellate courts that have considered the issue. *Zahourek v. Arthur Young and Co.*, 750 F.2d 827 (10th Cir.1984); *Thomas v. Brown & Root, Inc.*, 745 F.2d 279 (4th Cir.1984); *Cleary v. United States Lines, Inc.*, 728 F.2d 607 (3d Cir.1984).

The court in *Pfeiffer* recognized that the key factor in determining the applicability of the ADEA to an American citizen employed by a United States company or its subsidiary is the employee's "relevant work station." *Pfeiffer, supra,* 755 F.2d at 559. In that case, the plaintiff lived and worked overseas continuously throughout his entire period of employment with the defendant. *Id.* Thus, his work station was foreign, and he was not protected by the ADEA. *Id.*

It is uncontested in the present case that the plaintiff resided in Paris, France, continuously throughout his employment with the defendants and that his "employment base" was in Paris during this period. The plaintiff, however, attempts to place his claim outside the reach of *Pfeiffer* by characterizing his place of employment as both France and the United States, and, hence, within the ambit of the ADEA.

To support his claim of dual French and American employment, the plaintiff relies primarily on the fact that he travelled to the United States on business numerous times while he was employed by the defendants. The plaintiff states by way of affidavit that he spent 30 to 34 days in the United States in 1966. Unfortunately, the plaintiff does not indicate what portion of this time was spent on business-related activities. Although the plaintiff has not spe-

cified the amount of time he spent in the United States for any other year during his employment with the defendants, he indicates in his affidavit that the figures for 1966 are representative of the time he spent in this country in other years. At the same time, the plaintiff acknowledges that his business trips to the United States diminished later during his tenure with the defendants as officers of the defendants began to travel more frequently to Europe. The plaintiff also avers that his annual home leave visits, taken in the United States in nearly every year, were in part business-related. He does not state, however, what portion of these visits was business-related.

The defendants have submitted the affidavit of Laurence Schwartz, senior attorney for Case, stating that a review of the plaintiff's weekly expense reports shows that he made six trips to the United States between December 1974 and the date of his termination for which he submitted expense reports. The last of these trips was in July 1980. The plaintiff does not contest these statements. Even assuming that all these trips were business-related, a matter disputed by the parties, the total time spent in the United States for these trips amounts to only 17 days over a period of six years.

Viewing the evidence in the light most favorable to the plaintiff, as the court must, I cannot conclude that the plaintiff's place of employment was both France and the United States. Even if I assume that the plaintiff spent an average of approximately 30 days in the United States per year, all on business, the fact remains that over ninety percent of his time was spent abroad. Moreover, the plaintiff's business visits to the United States concerned his work for Case France and his supervisory responsibilities for Case's European operations. As a high-level executive of Case, one would expect the plaintiff to maintain extensive ties with the parent company, including occasional trips to the United States to confer with executives of the defendants. These occasional business

trips, however, are not sufficient to bring the plaintiff within the reach of the ADEA.

The plaintiff's responsibilities exclusively involved the defendants' European operations. With the exception of his occasional business trips to the United States, the plaintiff performed his employment duties continuously abroad. The rule prohibiting the extraterritorial application of the ADEA is not so rigid as to require that the plaintiff never set foot in the United States during his employment.

In fact, the district court decision in *Pfeiffer v. Wm. Wrigley Jr. Co.*, 573 F.Supp. 458, 459 (N.D.Ill.1983), *aff'd., Pfeiffer, supra,* indicates that the plaintiff in that case did not perform absolutely all his work abroad, but "virtually all" of it. Similarly in the present case, the plaintiff performed nearly all his work overseas. Contrary to the plaintiff's contention, it is not clear whether or to what extent the plaintiffs in *Cleary, Zahourek,* and *Thomas* travelled to the United States on business in connection with their foreign employment. The district court in *Cleary v. United States Lines, Inc.*, 555 F.Supp. 1251, 1253 (D.N.J.1983), *aff'd., Cleary, supra,* in fact, states that the plaintiff and his family were provided with transportation to the United States once per year, although it is not clear if such travel was, in any degree, business-related.

Nor can the plaintiff's employment be characterized as an "ambulatory" job, such as an airline pilot, bus driver, or tour director, where workweek employment may occur both within and outside the United States. *See Pfeiffer, supra,* 755 F.2d at 558. Such jobs, in given circumstances, might present true cases of dual foreign and United States employment subject to ADEA protection. As the plaintiff himself recognizes, however, his position with the defendants does not fit within this category.

■ The plaintiff also points out that his original employment contract with Case was entered into in the United States and not abroad. In *Pfeiffer, supra,* 755 F.2d at 555, as well, the plaintiff was originally

hired by the defendant in the United States. It is not the place where the plaintiff is hired, however, nor even the place where the termination decision is made that determines the applicability of the ADEA. *Id.* at 559; *Cleary, supra,* 728 F.2d at 610. Instead, it is the location of the "work station" that is determinative. *Id.*

The plaintiff emphasizes that he was elected vice-president of Case of America in 1965, charged with full responsibility for all of the company's European operations. He held this position for the remainder of his employment with the defendants. The plaintiff contends that his tenure in this position confirms his ties to the parent American company, Case. Regardless whether the plaintiff worked for an American company or its foreign subsidiary, or both, it is his place of employment which governs the applicability of the ADEA. *Pfeiffer, supra,* 755 F.2d at 559; *Cleary, supra,* 728 F.2d at 610.

The plaintiff's allegation that he was supervised and controlled by top management of the defendants based in the United States is not of any legal significance so long as the plaintiff performed his work abroad. The plaintiffs in *Cleary, Zahourek,* and *Thomas* were all denied the protection of the ADEA despite the fact that they were directly employed by American companies and not by foreign subsidiaries of the companies.

■ In sum, the court finds that the plaintiff's work station was outside the United States. As a result, the plaintiff termination claim is not cognizable under the ADEA as it existed at the time he was terminated.

**B. Retroactivity of 1984 ADEA Amendment**

On October 9, 1984, approximately three months prior to the commencement of this action, Congress enacted the Older Americans Act Amendments of 1984, Pub.L. 98–459, 98 Stat. 1767, 1792. Section 802(a) and (b) of the Act extended the reach of the ADEA to United States citizens employed abroad by American corporations or their subsidiaries, subject to an exception where applying the ADEA would violate the law of the country where the employee works. 29 U.S.C. §§ 623(f)(1) and (g), 630(f). The plaintiff contends that this amendment should be applied retroactively to the plaintiff despite the fact that he was terminated over one and a half years prior to the enactment of the 1984 amendment. The defendants contest the retroactive application of the amendment. They also assert that even if the 1984 amendment is applied retroactively, the plaintiff's action is barred because applying the ADEA in the present case would conflict with French law. 29 U.S.C. § 623(f)(1).

In *Pfeiffer, supra,* 755 F.2d at 559, the court concluded, without discussion, that the 1984 amendment does not apply retroactively. In a very recent case, decided after briefing in this matter had been completed, the District of Columbia Circuit Court of Appeals reached the same conclusion after a thorough analysis. *Ralis v. RFE/RL, Inc.,* 770 F.2d 1121 (D.C.Cir. 1985). The plaintiff attempts to distinguish the present case from *Pfeiffer* because the plaintiff's complaint in that case, as in *Ralis,* was filed prior to the effective date of the amendment. Although this court simply might assume that the court in *Pfeiffer* used the term "retroactive" in its commonly understood sense as referring to legislation which operates on rights which existed prior to the passage of the legislation irrespective of the filing date of a complaint, 1A C.D. Sands, Statutes and Statutory Construction § 41.01 (4th ed. 1972) (and cases cited therein), the court will evaluate independently the retroactive application of the 1984 amendment.

■ The Supreme Court in *Bradley v. School Bd. of City of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), stated:

"[A] court is to apply the law in effect at the time it renders [its] decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary."

Although the holding in *Bradley* specifically applied to the retroactivity of a law in effect at the time a direct appeal is pending, there is no reason why the rule should not also apply to the retroactive application of legislation by a district court. In any case, a statute will be applied retroactively if this is the clear and manifest intention of Congress. *United States v. Security Industrial Bank*, 459 U.S. 70, 79–80, 103 S.Ct. 407, 413–14, 74 L.Ed.2d 235 (1982).

The language of the amendment itself is equivocal as to its possible retroactive application. The amendment simply provides that it "shall take effect on the date of [its] enactment [October 9, 1984]." Pub.L. No. 98–450, 98 Stat. 1793, § 803(a). This language could mean either that the amendment applies to any complaint filed after the date of enactment or only to any cause of action which arises after this date.

The plaintiff, nevertheless, contends that Congress intended to apply the 1984 amendment concerning the extraterritorial reach of the ADEA to all actions initiated after the date of enactment. The plaintiff's argument centers on § 802(c)(2) of the 1984 legislation which provides:

"The amendment made by paragraph (1) of this subsection shall not apply with respect to any individual who retires, or is compelled to retire, before the date of the enactment of this act."

Paragraph (1) of § 802(c), which does not concern the extraterritorial reach of the ADEA, increased the required retirement income for exempt high-level executives from $27,000.00 to $44,000.00. 29 U.S.C. § 631(c)(1). The plaintiff argues that because § 802(c)(2) is the only provision of the amendment forbidding retroactive application to pre-amendment retirements, the provisions concerning the extraterritorial reach of the ADEA, § 802(a), (b)(1), and (b)(2), must necessarily apply to pre-amendment retirements.

The court finds that, at best, the terms of § 802(c)(2) are ambiguous as to the retroactivity of the provisions which allow for the extraterritorial application of the ADEA. The 1984 amendment must be read in light of the ADEA itself and not in isolation. Section 802(c) addresses a wholly different concern than § 802(a) and (b). The limitations imposed on the one section do not necessarily explain or modify the other sections of the amendment. "Not every silence is pregnant: *expressio unius est exclusio alterius* is therefore an uncertain guide to interpreting statutes...." *Illinois Dep't of Public Aid v. Schweiker*, 707 F.2d 273, 277 (7th Cir.1983) (citation omitted).

The plaintiff also claims that the amendment's legislative history indicates Congressional intent to apply the extraterritorial provisions retroactively. Even in advancing this argument, however, the plaintiff acknowledges that the legislative history is "somewhat ambiguous." The plaintiff points to two specific comments at the September 23, 1983, Senate hearing concerning the relevant provisions of the ADEA amendment. Age Discrimination and Overseas Americans, 1983: Hearings Before the Subcommittee on Aging of the Senate Committee on Labor and Human Resources, 98th Cong., 1st Sess. (1983). First, Senator Charles Grassley, the chief sponsor of the 1984 amendment, referred to it as "remedial legislation" without which "many older American workers will find themselves out in the cold with [sic] the shelter provided by the [ADEA]." *Id.* at 2. The plaintiff also cites the statement of EEOC Chairman Clarence Thomas that "[t]he only way ... to insure that other individuals do not find themselves in Mr. Cleary's [the plaintiff in *Cleary, supra* ] situation is to enact legislation ... to close the existing loophole." *Id.* at 3. Finally, the plaintiff draws the court's attention to the fact that Congress took the "unusual" step of including the relevant ADEA provisions in the broader legislation "because of the lateness of the session." H.R.Conf. No. 98–1037, 98th Cong., 2d Sess. 49, *reprinted in* 1984 U.S.Code Cong. & Ad. News 2974, 3037.

The plaintiff argues that these statements in the legislative history indicate Congress' clear intent to apply the 1984

amendment as soon as possible. Thus, according to the plaintiff's rationale, Congress must have intended the 1984 extraterritoriality provisions to apply to all action filed after the date of enactment, irrespective of the date a cause of action arose.

The court finds the statements cited by the plaintiff to be not only "somewhat ambiguous," as the plaintiff himself acknowledges, but completely unclear as to the intent of Congress. Simply because Congress may have wanted to expedite passage of the relevant provisions does not mean that it intended the provisions to apply retroactively. One might just as easily argue that Congress sought expedited enactment of the provisions in recognition of the fact that the provisions would not apply to causes of action which arose prior to the effective date of the legislation. In such case, the greater the delay in enacting the amendment, the greater the negative impact on prospective plaintiffs who had been subjected to pre-enactment extraterritorial age discrimination. If, as the plaintiff contends, however, the relevant provisions were intended to apply to any action commenced after the enactment date, plaintiffs claiming extraterritorial age discrimination simply could have delayed the filing of their age discrimination actions, insofar as the applicable period of limitation would allow.

The plaintiff also suggests that the 1984 amendments did not change the ADEA but simply clarified that the ADEA was intended to be applied extraterritorially. Specifically, the plaintiff cites Senator Grassley's reference to the amendment as "further clarification of congressional intent." *Hearings, supra,* at 2. As the court in *Ralis, supra,* 770 F.2d at 1130, observed, Senator Grassley's statement "cannot be taken as expressive of the intent of an earlier Congress (of which he was not even a part) which enacted the ADEA."

■ Moreover, the court in *Pfeiffer, supra,* 755 F.2d at 559, concluded that "the legislative history of the 1984 amendment leaves totally obscure whether the amendment was meant to change the law, to state

more clearly the original meaning of the law, or perhaps just to limit the extraterritorial application of the Act...." In the face of such ambiguity, the court will assume, according to the accepted canons of statutory construction, that when Congress enacts an amendment, it is presumed to intend a change in legal rights. *See, e.g., Argosy Ltd. v. Hennigan,* 404 F.2d 14, 20 (5th Cir.1968); *In re Bennett,* 338 F.2d 479, 484–85 (6th Cir.1964).

Having concluded that there is no definitive Congressional intent regarding the retroactivity of the 1984 amendment, the court must consider whether applying the 1984 amendment in the present case would result in "manifest injustice." *Bradley, supra,* 416 U.S. at 711, 94 S.Ct. at 2016. If so, the court will not apply the amendment retroactively.

In considering the issue of "manifest injustice," the Court in *Bradley* suggested that courts analyze "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Id.* at 717, 94 S.Ct. at 2019. The Court, quoting from *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801) (Marshall, C.J.), recognized that "such injustice could result 'in mere private cases between individuals,'" and cautioned that courts should "'struggle hard against a construction which will, by a retrospective operation, affect the rights of the parties.'" *Id.* The latter concern "stems from the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Id.* 416 U.S. at 720, 94 S.Ct. at 2021.

The defendant in *Bradley* was a school board, a public body, and the plaintiffs were individuals harmed by the unconstitutional actions of the board. The present litigation, in contrast, involves only private parties. While the court recognizes the important public policy objectives of the ADEA, *see* 29 U.S.C. § 621, the present case, nonetheless, is essentially a private action for damages. Unlike the situation in

*Schooner Peggy,* a case involving treaty interpretation, "resolution of this case would not cause repercussions in the international community, nor would it implicate long standing constitutional violations as in *Bradley.*" *Sikora v. American Can Co.,* 622 F.2d 1116, 1122 (3d Cir.1980).

Most importantly, to subject the defendants to potential liability for a cause of action created almost two years after the plaintiff's termination in the present case would be grossly unfair. At the time of the plaintiffs termination, the Act simply did not apply to his overseas employment. As the court in *Ralis, supra,* at 1127, observed:

> "It is quite incompatible with our fundamental notions of law that an act lawful at the time it was done can, at the stroke of the legislative pen, be rendered unlawful and the actor called to account for a completed now-condemned deed in the halls of justice."

The plaintiff argues, however, that it would not be unfair retroactively to apply the 1984 amendment because there was a split among the authorities as to the extraterritorial applicability of the ADEA as it existed prior to October 1984. It is true that the Wage-Hour Administrator of the United States Department of Labor originally interpreted the ADEA to apply extraterritorially when employees are hired in the United States for work abroad. Opinion Letter of the Wage-Hour Administrator, 8 Lab.Rel.Rep. 401:5217 (Sept. 24, 1968). The court also recognizes that the applicable regulation in effect at the time of the plaintiff's termination, 29 C.F.R. § 860.20, is not specific as to the extraterritorial reach of the ADEA. The regulation first states that the Act is "to apply only to performance of the described discriminatory acts in places over which the United States has sovereignty, territorial jurisdiction, or legislative control." The regulation then goes on to qualify this proscription, stating that activities within such areas are covered by the ADEA "even though the [discriminatory] activities are related to employment outside of such geographical areas."

■■■ However, Clarence Thomas, the chairman of the EEOC, the agency charged with enforcing the ADEA, stated at the September 23, 1983, hearings held to consider amending the ADEA that the Commission read the Act as inapplicable to Americans employed abroad by United States companies or their subsidiaries. *Hearings, supra,* at 4. It is well-established that the interpretation of a statute by the agency charged with its enforcement is entitled to great deference. *Youakim v. Miller,* 425 U.S. 231, 235, 96 S.Ct. 1399, 1402, 47 L.Ed.2d 701 (1976). Moreover, courts which have considered the question have uniformly held that the ADEA, in its pre-1984 amendment form, does not apply extraterritorially. *Pfeiffer, supra; Zahourek, supra; Thomas, supra; Cleary, supra, Ralis v. RFE/RL, Inc.,* 34 F.E.P. 400 (D.D.C.1984), *aff'd, Ralis, supra; Osborne v. United Technologies Corp.,* 16 F.E.P. 586 (D.Conn.1977). In view of the overwhelming weight of authority and the general presumption against the extraterritorial application of federal statutes, *see Foley Bros., Inc. v. Filardo,* 336 U.S. 281, 285, 69 S.Ct. 575, 577, 93 L.Ed. 680 (1949), the defendant could reasonably have expected that the ADEA did not apply to the termination of the plaintiff. Retroactive application of the 1984 amendment, thus, would not only be "manifestly unjust" to the defendants in the present action, but it would be patently unfair to similarly situated United States employers. *See Sikora, supra,* 622 F.2d at 1123 n. 13.

Further, in contrast to the amendment in the present case, the legislation at issue in *Bradley* did not effect a change in the substantive obligations of the parties. *Bradley, supra,* 416 U.S. at 721, 94 S.Ct. at 2021. In *Bradley,* the Court held § 718 of the Education Amendments of 1972, authorizing federal courts to award reasonable attorney fees to the prevailing party in a school desegregation case, applicable to attorney services rendered prior to the enact-

ment of the statute. The amendment in *Bradley*, therefore did not create a new civil rights cause of action where none had previously existed but simply affected the relief available to a prevailing party. Such changes, as opposed to changes in the substantive obligations of parties, are generally held to be immediately applicable to pending cases. *See United States v. Blue Sea Line*, 553 F.2d 445, 448 (5th Cir.1977); *see also Berman v. Schweiker*, 713 F.2d 1290 (7th Cir.1983) (Equal Access to Justice Act retroactively applies to attorney fee awards for work performed prior to the effective date of the Act); *Gautreaux v. Chicago Housing Authority*, 690 F.2d 601 (7th Cir.1982), *cert. denied*, 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983) (Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988, applies to cases pending on the date of the statute's enactment); *Bond v. Stanton*, 555 F.2d 172 (7th Cir.1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978) (Amendment to 42 U.S.C. § 1988 applies to cases pending on the date of the amendment's enactment). (The *Berman, Gautreaux,* and *Bond* cases, cited by the plaintiff, are also distinguishable from the present case as in each of those cases the court was able to find a clear legislative intent that the statute in question be applied retroactively).

Where, as in the present case, legislation creates entirely new substantive rights where none had previously existed, courts, in order to avoid interference with antecedent rights, have refused to apply the legislation retroactively. *See, e.g., Greene v. United States*, 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964); *Winfree v. Northern Pac. Ry. Co.*, 227 U.S. 296, 33 S.Ct. 273, 57 L.Ed. 518 (1913); *Ralis, supra*. Accordingly, the court finds that the presumption in favor of retroactivity articulated in *Bradley* is inapplicable to this case. The 1984 amendment does not apply to causes of action, as in the present case, which accrued prior to the effective date of the amendment, October 9, 1984. Having previously determined that the ADEA, as it existed at the time of the plaintiff's termi-

nation, does not cover the plaintiff's discrimination claim, the defendants' motion for summary judgment on the ADEA termination claim will be granted.

## III. ADEA RETALIATION CLAIM

As a separate cause of action, the plaintiff contends that because the plaintiff resisted the defendants' attempts to force him to retire and, further, in response to his filing formal charges of discrimination with the EEOC, the defendants engaged in a series of retaliatory actions against the plaintiff beginning on January 1, 1983. The alleged actions of retaliation include, inter alia, failure to forward necessary employment information in a timely manner, withholding and distorting this information, and causing the plaintiff unreasonable and unnecessary delay in the preparation of his 1982 federal income tax returns and in his application for Social Security benefits.

Section 4(d) of the ADEA, 29 U.S.C. § 623(d), provides in relevant part:

"It shall be unlawful for an employer to discriminate against any of his employees ... because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."

(The Wisconsin Fair Employment Act contains a parallel antiretaliation provision. Wis.Stat. § 111.322.) The defendants contend that the plaintiff's retaliation claim must be dismissed because the ADEA did not prohibit the termination of the plaintiff from his overseas job. The plaintiff argues that even if his ADEA termination claim falls, the retaliation claim is an independent cause of action which can go forward.

Title VII of the Civil Rights Act of 1964 contains a nearly identical anti-retaliation provision. 42 U.S.C. § 2000e–3(a). The Title VII provision, like § 4(d) of the ADEA, makes it unlawful for an employer to dis-

criminate against an employee either because he has opposed a practice made unlawful under Title VII (the "opposition" clause) or because he has filed a charge or otherwise participated in a proceeding under Title VII (the "participation" clause).

■ The Congressional purpose in enacting Title VII's anti-retaliation provision was to protect the employee who speaks out against his company's employment practices. *Parker v. Baltimore and Ohio R.R. Co.*, 652 F.2d 1012, 1019 (D.C.Cir. 1981); *see also Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1007–08 (5th Cir.1969). Specifically as regards the participation clause, the anti-retaliation provision insures that the processes and remedies provided by Congress remain meaningful for employees who believe that they have been the victims of unlawful discrimination. *See Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir.1978).

■ The participation clause of Title VII has been interpreted uniformly as protecting an employee who files discrimination charges with the EEOC, regardless of the ultimate resolution of the underlying claim. *See, e.g., Parker, supra*, 652 F.2d at 1019; *EEOC v. Kallir, Philips, Ross, Inc.*, 401 F.Supp. 66, 72 (S.D.N.Y.1975), *aff'd*, 559 F.2d 1203, 1207 (2d Cir.), *cert. denied*, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977). In addition, all federal appellate courts that have considered the scope of Title VII's opposition clause, including the Court of Appeals for the Seventh Circuit, have held that protection under the clause extends to all situations where the employee has a reasonable, good faith belief that the challenged employment practice violates Title VII, even if the belief is later found to be mistaken. *Love v. RE/MAX of America, Inc.*, 738 F.2d 383, 385 (10th Cir.1984); *Sisco v. J.S. Alberici Construction Co.*, 655 F.2d 146, 150 (8th Cir.1981), *cert. denied*, 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1137–40 (5th Cir.1981, *cert. denied* 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982); *Parker, supra; Mon-*

*teiro v. Poole Silver Co.*, 615 F.2d 4, 8 (1st Cir.1980); *Berg v. LaCrosse Cooler Co.*, 612 F.2d 1041, 1045–46 (7th Cir.1980); *Sias, supra.* The mistaken belief may be one of law or of fact. *Parker, supra*, 652 F.2d at 1020; *Berg, supra*, 612 F.2d at 1045 (A plaintiff "should not be burdened with the sometimes impossible task of correctly anticipating how [a given court] may interpret a particular statute.") Further, the retaliation alleged under the Title VII provision need not have occurred prior to the plaintiff's termination. *Rutherford v. American Bank of Commerce*, 565 F.2d 1162, 1165–66 (10th Cir.1977); *Bilka v. Pepe's, Inc.*, 601 F.Supp. 1254, 1257 n. 3 (N.D.Ill.1985).

The court believes that the principles governing the application of the Title VII provision apply with equal force to the ADEA anti-retaliation provision. The plaintiff in the present case objected that his termination was unlawful age discrimination under the ADEA. The court cannot say that this belief was unreasonable or in bad faith, even though I hold today that the plaintiff's termination claim is not cognizable under the ADEA because he was employed overseas.

The court further notes that the court in *Pfeiffer, supra*, 755 F.2d at 557–58, based its holding that the ADEA, as a general rule, does not apply extraterritorially, on the presumption against the extraterritorial application of federal statutes which in turn is based on the fear of outright collisions between domestic and foreign law. In the case of a retaliation claim, however, as opposed to a termination claim as was at issue in *Pfeiffer*, there is no serious danger of a conflict between foreign and domestic law.

■ The plaintiff's ADEA retaliation claim, contrary to the defendants' suggestion, does not fail as a matter of law as a result of the court's ruling that the plaintiff's ADEA termination claim cannot stand. Accordingly, the defendants' motion to dismiss the plaintiff's ADEA retaliation claim will be denied.

## IV. STATE LAW CLAIMS

The defendants also have moved to dismiss the plaintiff's state law claims for lack of subject matter jurisdiction. The motion is based on the supposition that the plaintiff's ADEA claims both would be dismissed. The ADEA retaliation claim, however, remains in the case. The court, therefore, will exercise pendent jurisdiction over the state claims. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The defendants' motion to dismiss the state claims, accordingly, will be denied.

■ The plaintiff, for his part, has filed a motion to amend his complaint in order to correct his failure to allege diversity jurisdiction in his original complaint. Thus far, the plaintiff has filed two amended complaints. In the first one, the plaintiff expressly alleged diversity jurisdiction under 28 U.S.C. § 1332 but failed properly to allege the citizenship of either defendant corporation pursuant to 28 U.S.C. § 1332(c). The court need not rule on the plaintiff's first amended complaint; the plaintiff has the right, under Rule 15(a), Federal Rules of Civil Procedure, to amend his complaint once as a matter of course prior to the service of a responsive pleading. (The defendants' motion to dismiss is not a responsive pleading for purposes of this rule. *Textor v. Bd. of Regents of Northern Illinois Univ.*, 711 F.2d 1387, 1391 n. 1 (7th Cir.1983).)

■ The plaintiff then submitted a second amended complaint which properly alleges the citizenship of defendant Tenneco but still fails to allege the state of incorporation of defendant Case. The plaintiff will be permitted to file this second amended complaint, and, if he chooses, will be allowed further to amend his complaint to allege Case's state of incorporation, provided such amendment is made within twenty days of this order.

Therefore, IT IS ORDERED that the defendants' motion to dismiss the plaintiff's ADEA termination claim, treated as a motion for summary judgment, be and hereby is granted.

IT IS ALSO ORDERED that the defendants' motion to dismiss the plaintiff's ADEA retaliation claim be and hereby is denied.

IT IS FURTHER ORDERED that the defendants' motion to dismiss the plaintiff's state law claims be and hereby is denied.

IT IS FURTHER ORDERED that the plaintiff's motion to amend his complaint be and hereby is granted. The plaintiff may amend his complaint to allege the state of incorporation of defendant Case, provided such amendment is served and filed within twenty days of the date of this order.

IT IS FURTHER ORDERED that a status conference be and hereby is scheduled in this case for 10:00 A.M., Wednesday, October 16, 1985, in courtroom 225, Federal Building, 517 East Wisconsin Avenue, Milwaukee, Wisconsin.