**Alfonso HERRERA, Plaintiff,**

v.

**NBS, INC., Defendant.**

**No. EP–10–CV–13–PRM.**

United States District Court,
W.D. Texas,
El Paso Division.

Aug. 25, 2010.

Joseph P. Pinon, El Paso, TX, for Plaintiff.

Bruce A. Koehler, Mounce, Green, Myers, Safi, Paxson & Galatzan, P.C., El Paso, TX, for Defendant.

### ORDER DENYING MOTION FOR PARTIAL DISMISSAL

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered Defendant NBS, Inc.'s (Defendant) "Motion for Partial Dismissal" (Docket No. 5) [hereinafter Defendant's Motion], filed on January 29, 2010; Plaintiff Alfonso Herrera's (Plaintiff) "Response to Defendant's Motion for Partial Dismissal" (Docket No. 7) [hereinafter Plaintiff's Response], filed on February 8, 2010; and Defendant's "Reply to Plaintiff's Response to Defendant's Motion for Partial Dismissal" (Docket No. 9) [hereinafter Defendant's Reply], filed on February 22, 2010 in the above-captioned cause. After due consideration, the Court is of the opinion that Defendant's motion should denied for the reasons that follow.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On January 12, 2010, Defendant filed its "Notice of Removal" with the Court.

Docket No. 3. In that Notice, Defendant included "Plaintiff's Original Petition" (*id.* at 3–14) [hereinafter Plaintiff's Petition] and "Defendant's Plea to the Jurisdiction and Original Answer" (*id.* at 16–19) [hereinafter Defendant's Answer]. Plaintiff alleges breach of contract, fraud, and violations of the Texas Labor Code and Title VII of the Civil Rights Act of 1964 (national origin discrimination and retaliation). Pl.'s Pet. ¶ 7.

Defendant, a business specializing in office furnishings and design, employed Plaintiff, an individual "of Hispanic/Mexican national origin," from approximately March 2006 until March 2008 as its "Mexico Marketing Director." Pl.'s Pet. ¶¶ 7–8, 10, 20. Plaintiff contends that "his national origin, Hispanic/Mexican, was a motivating factor and a consideration in Defendant['s]" decisions to withhold and delay payments on commissions that Plaintiff earned through sales, to remove him from one of his accounts, and ultimately to discharge him. Pl.'s Pet. ¶ 46. Further, Plaintiff complains that Defendant committed fraud and breach of contract by failing to pay him commissions as promised in his employment contract. Pl.'s Pet. ¶¶ 44–45.

On January 29, 2010, Defendant filed the instant "Motion for Partial Dismissal." Docket No. 5. Therein, Defendant asserts that "Plaintiff's claims of discrimination and retaliation fail and should be dismissed" under Federal Rule of Civil Procedure 12(b)(1) because the Court "does not have subject matter jurisdiction over Plaintiff's Title VII and Texas Labor Code claims." *Id.* at 1–2. Defendant asserts that Title VII and the Texas Labor Code "do not apply to a non-citizen employee whose workplace is outside the United States." *Id.* ¶ 1. Defendant claims that Plaintiff is a "citizen of the Republic of Mexico who worked for [Defendant] in the Republic of Mexico" and is therefore not covered under either statute. *Id.* Conse-

quently, Defendant asserts that the Court lacks jurisdiction.

Plaintiff agrees that Title VII does not govern aliens employed outside of the United States and that Plaintiff is a citizen of the Republic of Mexico. Pl.'s Resp. 1, 4. However, Plaintiff contends that "Title VII does prohibit discrimination against non-U.S. citizens employed within the United States" and claims that Plaintiff worked for Defendant *within* El Paso, Texas and is therefore covered under both statutes. Pl.'s Resp. 4, 8.

## II. LEGAL STANDARD

### A. The Rule 12(b)(1) Standard

■ Defendant's motion is premised upon Rule 12(b)(1). Def.'s Mot. ¶ 9. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject matter jurisdiction. FED.R.CIV.P. 12(b)(1). Federal courts are courts of limited jurisdiction, and therefore have power to adjudicate claims only when jurisdiction is conferred by statute or the Constitution. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Stockman v. Fed. Election Comm'n,* 138 F.3d 144, 151 (5th Cir.1998). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998).

The Fifth Circuit has recognized two types of challenges to a court's subject-matter jurisdiction under Rule 12(b)(1): "facial attacks" and "factual attacks." *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir.1981) (citations omitted). A "facial attack" occurs when a defendant files a Rule 12(b)(1) motion unaccompanied by supporting evidence. *Id.* In that instance, "the trial court is required merely to look

to the sufficiency of the allegations in the complaint because they are presumed to be true." However, "if a defendant makes a 'factual attack' upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony or other evidentiary materials." *Paterson*, 644 F.2d at 523 (citations omitted). In the event of a factual attack, "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Id.* "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (citations and internal quotations omitted).

## B. Rule 12(b)(6) Provides the Appropriate Standard, Not Rule 12(b)(1)

■ Defendant asserts that its Motion raises a factual attack to the Court's subject matter jurisdiction (Def.'s Mot. ¶ 9), which would eliminate the presumption of truthfulness that Plaintiff would otherwise enjoy when confronting a facial attack, and thereby allows the Court to look beyond undisputed facts. However, Defendant's Motion is not properly construed as a 12(b)(1) motion. Instead, it is properly viewed as a motion to dismiss for failure to state a claim under 12(b)(6), which has a more favorable standard for plaintiffs. *See Williamson*, 645 F.2d at 415–16 ("[R]efusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides ... a greater level of protection to the plaintiff [because] ... the defendant is forced to proceed under 12(b)(6)".).

Defendant's 12(b)(1) argument is based on the premise that the terms of Title VII do not protect non-citizens working abroad, and therefore the Court does not have jurisdiction to hear a Title VII case in which the plaintiff is both a non-citizen and works abroad. In other words, according to the Defendant, the Court lacks jurisdiction because the Plaintiff in this case does not meet a statutory requirement. To reach this conclusion, Defendant cites two provisions of Title VII. First, Defendant turns to the definition of "employee," which, by negative inference, excludes non-citizens working abroad from Title VII's protections.[1] 42 U.S.C. § 2000e(f) (2006). Second, Defendant looks to the section on foreign applicability, which provides that, "[t]his subchapter shall not apply to an employer with respect to the employment of aliens outside any State." 42 U.S.C. § 2000e–1.

Both parties agree that non-citizens working abroad are not protected by Title VII, but satisfaction of this element of the claim should not be confused with a jurisdictional requirement. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (describing the Supreme Court's "less than meticulous" decisions that conflated jurisdictional attacks with merit based attacks); 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.30[1] (3d. Lexis 2010) ("When a claim is based on a federal statute, the parties and courts sometimes erroneously conflate the question of subject matter jurisdiction with the question of whether the plaintiff can prove that the federal statute actually applies to the defendant.").

In *Arbaugh*, the Supreme Court examined provisions of Title VII similar to those singled out by Defendant, and concluded that they were non-jurisdictional in

---

1. "With respect to employment in a foreign country, [employee] includes an individual who is a citizen of the United States." 42 U.S.C. § 2000e(f).

nature. 546 U.S. at 504, 126 S.Ct. 1235. Specifically, the Supreme Court looked at the definition of "employer" in 42 U.S.C. § 2000e(b), which contained an "employee-numerosity requirement" limiting application of the statute to employers who have fifteen or more employees. *Id.* The Supreme Court held that "the numerical threshold does not circumscribe federal-court subject-matter jurisdiction." *Id.* The Supreme Court noted that "employer," like the term "employee" presently at issue, falls in the section labeled "Definitions," and not under the jurisdictional provisions in 42 U.S.C. § 2000e–5(f). *Id.* at 505–06, 126 S.Ct. 1235. Instead, the subsection with the title "Jurisdiction and Venue" contains a jurisdictional provision, which manifests "Congress' intention to provide a federal forum for the adjudication of Title VII claims." *Arbaugh,* 546 U.S. at 506, 126 S.Ct. 1235. Lastly, the Supreme Court concluded that "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed.... But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character." *Id.* at 517, 126 S.Ct. 1235.

The Court finds that, in accordance with the Supreme Court's decision in *Arbaugh,* the Title VII provisions cited by the Defendant (§ 2000e(f) and § 2000e–1) are non-jurisdictional in nature because Congress has not clearly stated that these statutory limitations are jurisdictional. Therefore, these provisions alone do not support Defendant's contention that the Court lacks jurisdiction under Rule 12(b)(1).

Even if a 12(b)(1) motion was proper, Defendant misstates the standard. Under Defendant's theory, Plaintiff must show that he worked within the United States both to establish jurisdiction and to prove an element of his cause of action. *See* Def.'s Mot. 4–5. However, "when the basis of jurisdiction is also an element in the plaintiff's federal cause of action," a strict standard applies. *Williamson,* 645 F.2d at 415 (citing *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). The Fifth Circuit has held:

> Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court (assuming that the plaintiff's federal claim is not immaterial and made solely for the purposes of obtaining federal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.

*Id.*

Therefore, the Court finds that it has jurisdiction and treats Defendant's Motion as an attack on the merits, unless Defendant's Title VII and Texas Labor Code claims are "immaterial," "insubstantial," "frivolous," and "made solely for the purposes of obtaining federal jurisdiction." *See id.* at 416 (describing the "exceptions" [2] above). However, Defendant's Title VII and Texas Labor Code claims form the principal basis for Plaintiff's Petition and cannot be described in the terms listed above. Therefore, the Court views the Defendant's Motion as an attack on the merits.

---

**2.** A related "exception" is inapplicable here because it is applied when "the jurisdictional issue can be extricated from the merits and tried as a separate issue." *Williamson,* 645 F.2d at 416 n. 10 (citation omitted). However-

er, when it is "clear that the jurisdictional issues reaches the merits of the plaintiff['s] case," as in the present situation, the exception does not apply. *See id.* at 416.

■ When a motion is incorrectly styled as a challenge to subject matter jurisdiction, but is in fact an attack on the merits of the claim, the proper course of action is to analyze the motion under Rule 12(b)(6) or Rule 56. *Montez v. Department of the Navy,* 392 F.3d 147, 150 (5th Cir.2004); *see Arbaugh,* 546 U.S. at 514, 126 S.Ct. 1235; *Williamson,* 645 F.2d at 415; *Rodriguez v. Filtertek, Inc.,* 518 F.Supp.2d 845, 848 (W.D.Tex.2007) (Cardone, J.). Accordingly, the Court shall construe Defendant's Motion as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## C. The Rule 12(b)(6) Standard

Rule 12(b)(6) provides the correct standard to analyze Defendant's Motion, even though both parties attached documents to their filings, which, under other circumstances, could convert the Motion into one for summary judgment. *See* Def.'s Mot. Ex. 1 (attaching the affidavit of Mike Chambers); Pl.'s Resp. Ex. A, B (including the unsworn affidavit of Alfonso Herrera, other documents, and Defendant's EEOC determination); Pl.'s Supplemental Resp. to Def.'s Mot. for Partial Dismissal (Docket No. 8) (containing the Defendant's sworn affidavit). Rule 12(d) stipulates that "[i]f on motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED.R.CIV.P. 12(d). However, the Court has "complete discretion" to exclude these materials from its consideration. *See Isquith ex rel. Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 193–94 (5th Cir. 1988) (citations omitted). The Court chooses to exercise that discretion here

and will not consider any materials outside the pleadings at present.[3] The Court does so to avoid surprise to the parties, who believed they were addressing a 12(b)(1) motion, which cannot be converted into a summary judgment motion under Rule 12(d). *See id.* at 194.

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6). However, "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982) (quotation omitted). To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Gregson v. Zurich Am. Ins. Co.,* 322 F.3d 883, 885 (5th Cir.2003) (internal quotation omitted). Moreover, "the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Collins,* 224 F.3d at 498 (citation omitted). The complaint " 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.' " *Cuvillier v. Sullivan,* 503 F.3d 397, 401 (5th Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including

**3.** The Court is mindful that, under some circumstances, documents attached to 12(b)(6) motions to dismiss can be considered without converting the 12(b)(6) motion into one for summary judgment. *See Collins v. Morgan*

*Stanley Dean Witter,* 224 F.3d 496, 498–499 (5th Cir.2000). However, the Court declines to do so here. Therefore, the Rule 12(b)(6) standard governs.

attachments thereto." *Collins,* 224 F.3d at 498 (but noting exceptions to this rule).

## III. ANALYSIS

### A. Title VII and the Texas Labor Code

Title VII of the Civil Rights Act of 1964 makes it unlawful for "an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... national origin." 42 U.S.C. § 2000e–2(1). Only one element of the Title VII claim is at issue here.[4] In Defendant's Motion, Defendant challenges whether Plaintiff was "working within the United States." Def.'s Mot. ¶¶ 1, 10–18. Title VII does not protect non-citizens employed outside of the United States.[5] *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.,* 261 F.3d 512, 524 n. 34 (5th Cir.2001) (citing 42 U.S.C.2000e(f); 42 U.S.C.2000e–1(a); *Espinoza v. Farah Mfg. Co.,* 414 U.S. 86, 95, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973)).

Defendant's challenge to Plaintiff's Texas Labor Code claims is analogous to the Title VII challenge. The Texas Labor Code provides that "an employer commits an unlawful employment practice if because of ... national origin ... the employer ... discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." Tex. Lab. Code. Ann. § 21.051 (West 2006). Just as Title VII does not afford protections to those employed outside of the United States, the Texas Labor Code "does not apply to an employer with respect to the employment of a person outside [Texas]."[6] Tex. Lab. Code Ann. § 21.111.

Similarities between the statutes are no coincidence; Chapter 21 of the Texas Labor Code was designed "to coordinate and conform with federal law under Title VII of the Civil Rights Act of 1964." *Caballero v. Central Power and Light Co.,* 858 S.W.2d 359, 361 (Tex.1993); *see* Tex. Lab. Code Ann. § 21.001(1) ("The general pur-

---

**4.** Defendant briefly asserts that Plaintiff was "an independent contractor and not an employee of Defendant." Def.'s Mot. 6 n. 4; *see* Def.'s Reply ¶ 5(e). Yet Defendant does not cite statutory or case law to articulate the legal significance of such a difference, nor does Defendant offer any guidance to the Court in making the factual distinction between the designations. Additionally, Defendant briefly contends that Plaintiff is not covered under Title VII because he "was not authorized for employment within the United States." Def.'s Mot. ¶ 11; *see* Def.'s Reply ¶ 5(c). But, Defendant does not cite case law relevant to Title VII when making this point, instead, Defendant relies on cases discussing the Age Discrimination in Employment Act (ADEA) (29 U.S.C. § 263 (2006)) and fails to explain why the ADEA is applicable. Because of the foregoing, the Court is unwilling to address these issues in the present Order.

**5.** Both parties correctly acknowledge that "Title VII prohibits discrimination against aliens employed within the United States."

Def.'s Mot. ¶ 13 (citing *Espinoza v. Farah Mfg. Co.,* 414 U.S. 86, 95, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973)); Pl.'s Resp. 4 ("Title VII does prohibit discrimination against non-U.S. citizens employed within the United States") (citing *Espinoza,* 414 U.S. at 95, 94 S.Ct. 334). However, the parties disagree over whether Plaintiff was employed *within* Texas and the United States, or instead was employed in Mexico. *See, e.g.,* Def.'s Mot. ¶ 1; Pl.'s Resp. 1.

**6.** Both parties treat Title VII and the Texas Labor Code similarly by assuming that, as it pertains to the issues presently under consideration, if Title VII applies, then so must the Texas Labor Code. Def.'s Mot. 5 n. 3 ("[T]he arguments set forth herein under the authority of Title VII are equally applicable to, and directed at, Plaintiff's [Texas Labor Code] claims"); *see* Pl.'s Resp. 1 (claiming that "Title VII and the Texas Labor Code apply to all employees working in the United States, even undocumented aliens").

poses of this chapter are to: (1) provide for the execution of the policies of Title VII of the Civil Rights Act"). When the Texas Supreme Court reviewed the statute of limitations provision in the same part of the Texas Labor Code presently at issue to determine if it was jurisdictional, it cited the decision in *Arbaugh* repeatedly. In fact, the Texas Supreme Court noted that it had developed a bright line rule similar to the one in *Arbaugh*. *See In re United Services Auto. Ass'n*, 307 S.W.3d 299, 307–10 (Tex.2010) (holding that "the two-year period for filing suit is mandatory but not jurisdictional"). Given the similarities in the objectives of the statutes, the parallel provisions at issue, and the statutory language and case law requiring courts to interpret the Texas Labor Code in conformity with Title VII, the Court declines to analyze the two provisions independently in this Order.

## B. Location of Employment

The question before the Court is whether Plaintiff was employed within the United States, specifically El Paso, Texas. *See e.g.* Def.'s Mot. ¶ 1; Pl.'s Resp. 1. Or, to use the language of Title VII, whether Defendant's "employment [was] ... outside any State." 42 U.S.C. § 2000e–1(a).

The Fifth Circuit has yet to articulate the distinction between employment outside of a state and employment within a state. The parties address the "primary work station test" and the "center of gravity test," which have been employed by other courts. Def.'s Mot. ¶¶ 13–18; Pet.'s Resp. 5–7; Def.'s Reply 2–5. The Court finds that under the Rule 12(b)(6) standard, Plaintiff's Petition survives both proposed tests and a common sense understanding of employment "outside any State."

The primary work station test focuses on the place where the work is actually performed, and disregards other factors such as the location where the plaintiff was hired, trained, or the location of the employees supervisors. *See Shekoyan v. Sibley Int'l Corp.*, 217 F.Supp.2d 59, 68 (D.D.C.2002) (surveying cases). However there is not yet a settled formulation of this "test." Another court in the El Paso Division of the Western District of Texas observed that under the "primary work station test," individuals are employed within the place where they "spend[ ] the majority of [their] working hours." *Gomez v. Honeywell Int'l, Inc.*, 510 F.Supp.2d 417, 421–23 (W.D.Tex.2007) (Cardone, J.); *Rodriguez*, 518 F.Supp.2d at 850–51. Another district court in the Fifth Circuit concluded that a non-citizen worked outside the United States because "he lived and carried out his duties in Japan." *Iwata v. Stryker Corp.*, 59 F.Supp.2d 600, 604 (N.D.Tex.1999). Other courts using this test have similarly focused on the location of the work performed. *See Pfeiffer v. Wm. Wrigley Jr. Co.*, 755 F.2d 554, 556 (7th Cir.1985) (examining provisions of the ADEA[7] similar to those found in Title VII and concluding that the plaintiff's work station was "foreign" because he was "employed overseas—lived and worked there—continuously throughout his entire period of employment"); *Wolf v. J.I. Case Co.*, 617 F.Supp. 858, 862 (E.D.Wis.1985) (examining the ADEA and determining that plaintiff worked outside the United States because "over ninety percent of his time was spent abroad"); *Shekoyan*, 217 F.Supp.2d at 68 (concluding that plaintiff worked abroad because he was "specifically hired by the defendant to work in the Republic of Georgia and he performed his duties there").

The "center of gravity test" looks to the "totality of the circumstances," but pro-

---

7. Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (2006).

vides a non-exhaustive list of criteria to consider, including:

> (1) the site of the creation of the employment relationship including where the terms of employment were negotiated; (2) the intent of the parties concerning the location of the employment; (3) the locations of the reporting relationships for the position at issue; (4) the actual locations where the employee performed duties and received benefits as well as the relative amount of time the employee spent at each of these sites; and (5) the location of employee's domicile.

*Gomez,* 510 F.Supp.2d at 423 (discussing *Torrico v. IBM Corp.,* 213 F.Supp.2d 390 (S.D.N.Y.2002)).

In his Petition, Plaintiff asserts that he was hired at a meeting in El Paso, Texas. (Pl.'s Pet. ¶ 11); that he was supervised by Defendant's employees (who were located in El Paso) [8] (*see id.* ¶¶ 4, 13–14); that he was provided with a furnished office in El Paso and with business cards showing he could be contacted by calling an El Paso number (*id.* ¶ 14); that his only office at the time he was fired was the one provided by Defendant in El Paso (*id.* ¶ 15); that he attended weekly sales meetings in El Paso (*id.* ¶ 18); and that half of the forty hours per week he worked were spent in El Paso (*id.* ¶¶ 18–19).

■ Taking these assertions as true, construing them in the light most favorable to Plaintiff, and resolving all doubt in favor of the Plaintiff, as the Court must under Rule 12(b)(6), Plaintiff's Petition meets the requirements of the primary work station test. Plaintiff's assertion that he worked fifty percent of his time in the United States puts him on far stronger ground than plaintiffs who have not met the requirements of the primary work station test. *C.f. Pfeiffer,* 755 F.2d at 556 (plaintiff worked "continuously" overseas); *Wolf,* 617 F.Supp. at 858 ("ninety percent of plaintiff's time was spent abroad"); *Gantchar, et al. v. United Airlines, Inc.,* 1995 WL 137053, at *10, 1995 U.S. Dist. LEXIS 3910, at *35 (N.D.Ill. March 24, 1995) (approximately eighty percent of the plaintiff's work time spent abroad). Based on the facts alleged, the present case cannot be so simply dismissed. While a strict, fifty percent bright-line test might not be enough to determine the location of a plaintiff's employment, the Court must resolve its doubts at this stage in favor of the Plaintiff. *See id.* (expressing doubt that there is a rule defining "work performed less than 50% within the United States as necessarily extraterritorial"). Given the ambiguity in the primary work station test, and that Plaintiff's Petition asserts that he spent at least fifty percent of his working time in the United States, the Court is of the opinion that dismissal is inappropriate at this stage.

Plaintiff also meets the "center of gravity" test. The first, third, and fourth factors weigh in favor of the Plaintiff. He asserts that his contract was formed in Texas, that half of his working time was spent in Texas, and that his supervisors (and thus his reporting relationship) were located in Texas. The other two factors are not addressed in the Petition, and the Court cannot assume that they weigh against Plaintiff.

Lastly, with no actual test prescribed or adopted by the Fifth Circuit, the Court should bear in mind the plain language of the statute. The statute does "not apply to an employer with respect to the employ-

---

**8.** Although Plaintiff does not clearly describe the location of his supervisors, his Petition suggests that they were located in El Paso at the company headquarters.

ment of aliens outside any State" (42 U.S.C. § 2000e–1). In his Petition, Plaintiff repeatedly directs the Court to the aspects of his work which occurred in El Paso, Texas—such that at least half of his time was spent attending meetings and working at his office in El Paso. Moreover, Plaintiff claims that he worked for a company based in El Paso. After examining the assertions in Plaintiff's Petition in light of the standard required by Rule 12(b)(6), the Court cannot conclude that Plaintiff worked "outside any State" for the purposes of deciding Defendant's Motion.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendant's Motion should be denied. Defendant's objection to the Court's jurisdiction is based on non-jurisdictional components of Title VII and the Texas Labor Code. Defendant's Motion is properly understood as directed to the merits of Plaintiff's claim under Rule 12(b)(6). In his Petition, Plaintiff's Title VII and Texas Labor Code claims are sufficiently stated so as to survive Defendant's challenge.

Accordingly, **IT IS ORDERED** that Defendant NBS, Inc.'s "Motion for Partial Dismissal" (Docket No. 5) is **DENIED.**