**William G. MAHONEY, Roy S. De Lon, Appellees**

v.

**RFE/RL, INC., Appellant.**

**Nos. 93–7134, 93–7144.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 23, 1994.

Decided Feb. 28, 1995.

Rehearing and Suggestion for Rehearing In Banc Denied April 19, 1995.

N. Frank Wiggins, Washington, DC, argued the cause and filed the briefs for appellant.

Jane M. Picker, Cleveland Heights, OH, argued the cause for appellees. With her on the brief were Kenneth J. Kowalski, Gordon J. Beggs, Cleveland, OH, and William Bransford, Washington, DC.

Before: SILBERMAN, HENDERSON, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

If an American corporation operating in a foreign country would have to "violate the laws" of that country in order to comply with the Age Discrimination in Employment Act,

29 U.S.C. § 623(f)(1), the company need not comply with the Act. The question here is whether this "foreign laws" exception in § 623(f)(1) applies when the overseas company, in order to comply with the Act, would have to breach a collective bargaining agreement with foreign unions.

RFE/RL, Inc. is a Delaware non-profit corporation. It is funded but not controlled by the federal government, *Ralis v. RFE/RL, Inc.*, 770 F.2d 1121, 1125 (D.C.Cir.1985), and is best known for its broadcast services, Radio Free Europe and Radio Liberty. RFE/RL's principal place of business is Munich, Germany. In 1982, the company entered into a collective bargaining agreement with unions representing its employees in Munich. One of the provisions of the labor contract, modeled after a nation-wide agreement in the German broadcast industry, required employees to retire at age sixty-five.[1] In 1982, the Age Discrimination in Employment Act had no extraterritorial reach and, from all that appears, this portion of the RFE/RL collective bargaining agreement was entirely lawful. *See Ralis v. RFE/RL, Inc.*, 770 F.2d at 1124.

Congress amended the Act in 1984 to cover American citizens working for American corporations overseas. Pub.L. No. 98–459, 98 Stat. 1767, 1792–93 (codified as amended at 29 U.S.C. §§ 623(h), 630(f)). RFE/RL initially thought its American employees in Munich would therefore no longer have to retire at the age of sixty-five, as the collective bargaining agreement provided, and could continue to work until they were seventy if they so chose.[2] In order to implement this understanding, the company applied to the "Works Council" for limited exemptions from its contractual obligation. Works Councils (*Betriebsräte*) exist in all German firms with twenty or more workers. *See* Christopher S. Allen, *Principles of the Economic System, in* GERMANY AND ITS BASIC LAW: PAST, PRESENT AND FUTURE; A GERMAN-AMERICAN SYMPOSIUM 339, 348 (Paul Kirchhof & Donald P. Kommers eds., 1993). They are bodies elected by both unionized and nonunionized employees. Their duties include insuring that management adheres to all provisions of union contracts. Departures from contractual requirements are illegal without the Works Council's approval. Rejecting RFE/RL's requests, the Works Council here determined that allowing only those employees who were American citizens to work past the age of sixty-five would violate not only the mandatory retirement provision, but also the collective bargaining agreement's provision forbidding discrimination on the basis of nationality.

RFE/RL appealed the Works Council's decisions with respect to several employees, including plaintiff De Lon, to the Munich Labor Court and lost. The Labor Court agreed with the Works Council that RFE/RL must uniformly enforce the mandatory retirement provisions because exemptions would unfairly discriminate against German workers. The Labor Court also held that the company's retaining employees over the age of sixty-five despite the collective bargaining agreement would be illegal. RFE/RL negotiated with the unions to delete the mandatory retirement provision from the collective bargaining agreement, but to no avail.

The company terminated plaintiff De Lon in 1987, and plaintiff Mahoney in 1988. Both plaintiffs were working for the company in Munich, both are United States citizens, and both were discharged pursuant to the labor contract because they had reached the age of sixty-five. The parties agree that RFE/RL thereby violated the Age Discrimination in Employment Act unless the "foreign laws" exception applied. The Act prohibits employers from discriminating against employees on the basis of age. 29 U.S.C. § 623.

---

1. Section II.5.a) 5) of the collective bargaining agreement states:

   Regular employment ends through: retirement; at the latest, however, at the end of the month in which the employee reaches age 65, in which case notice of termination is not required, and/or in accordance with pertinent provision of the RFE/RL Inc. pension plans.

2. In 1984 employers were permitted to enforce mandatory retirement of employees reaching the age of 70. *Compare* Pub.L. No. 95–256, 92 Stat. 189 (1978) *with* Pub.L. No. 99–592, 100 Stat. 3342 (1986).

"Employee" includes "any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country" (29 U.S.C. § 630(f)); and it is common ground that the Act covers RFE/RL.

On cross-motions for summary judgment, the district court found that company liable for violating the Act, ruling that the "foreign laws" exception (29 U.S.C. § 623(f)(1)) did not apply to breaches of collective bargaining agreements. *Mahoney v. RFE/RL, Inc.,* 818 F.Supp. 1 (D.D.C.1992). The case then proceeded to trial on the issue of damages. A final judgment was entered May 10, 1993. The court amended this in a Revised Order, entered June 8, 1993, and another Order, entered July 7, 1993. RFE/RL appeals the judgment establishing its liability and the award of damages for violating the Act. Mahoney and De Lon cross-appeal the judgment setting the amount of their damages.

The "foreign laws" exception to the Act states:

It shall not be unlawful for an employer, employment agency, or labor organization—

(1) to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where ... such practices involve an employee in a workplace in a foreign country, and compliance with such subsections would cause such employer, or a corporation controlled by such employer, to violate the laws of the country in which such workplace is located;

29 U.S.C. § 623(f)(1).

The district court held § 623(f)(1) inapplicable because the mandatory retirement provision "is part of a contract between an employer and unions—both private entities— and has not in any way been mandated by the German government. Second, the provision does not have general application, as laws normally do, but binds only the parties to the contract." *Mahoney,* 818 F.Supp. at 3. Although "the mandatory retirement provision in the union contract had 'legal' force in Germany in the sense that it was legally binding," the court found this to be "precisely the sense in which such contracts in this country may be said to have 'legal' force; yet they are not ordinarily thought of as 'laws.' " *Id.*

The decision of the Supreme Court in *Norfolk & Western Railway v. American Train Dispatchers' Ass'n,* 499 U.S. 117, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991), stands firmly against the district court's interpretation. But the parties unaccountably failed to mention the case to the district court, and failed again even to cite the decision on appeal. If *Norfolk & Western* had been brought to the district court's attention, we have no doubt that it would have ruled the other way.

*Norfolk & Western* held that a rail carrier's exemption under 49 U.S.C. § 11341(a) "from all other law" included a "carrier's legal obligations under a collective-bargaining agreement." 499 U.S. at 127, 111 S.Ct. at 1162. This meaning of "law" was, to the Court, clear and certain. *Id.* at 133, 111 S.Ct. at 1165–66. "A contract," the Court reasoned, "has no legal force apart from the law that acknowledges its binding character." *Id.* at 130, 111 S.Ct. at 1164. A contract depends on laws to enforce it and make it effective. *Id.* To drive the point home the Court quoted extensively from its prior opinions. "The obligation of a contract is 'the law which binds the parties to perform their agreement.' " *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 429, 54 S.Ct. 231, 237, 78 L.Ed. 413 (1934) (quoting *Sturges v. Crowninshield,* 17 U.S. (4 Wheat.) 122, 197, 4 L.Ed. 529 (1819)). It is the law that gives "legal and binding effect to collective agreements." *Detroit & T.S.L.R.R. v. United Transp. Union,* 396 U.S. 142, 156, 90 S.Ct. 294, 302, 24 L.Ed.2d 325 (1969). "Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms. This principle embraces alike those laws which affect its construction and those which affect its enforcement or discharge." *Farmers & Merchants Bank of Monroe v. Federal Reserve Bank of Richmond,* 262 U.S. 649, 660, 43 S.Ct. 651, 655, 67 L.Ed. 1157 (1923).

The point of *Norfolk & Western* is that when a company fails to comply with a labor contract it violates "law," which is why the

statutory exemption from "law" relieved carriers of their contractual obligations. Section 623(f)(1) of the Age Discrimination in Employment Act is indistinguishable. *See West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 98–99, 111 S.Ct. 1138, 1146–47, 113 L.Ed.2d 68 (1991). If RFE/RL had not complied with the collective bargaining agreement in this case, if it had retained plaintiffs despite the mandatory retirement provision, the company would have violated the German laws standing behind such contracts, as well as the decisions of the Munich Labor Court. In the words of § 623(f)(1), RFE/RL's "compliance with [the Act] would cause such employer ... to violate the laws of the country in which such workplace is located." Domestic employers of course would never face a comparable situation; the Supremacy Clause of the Constitution would force any applicable state laws to give way, U.S. Const. art. VI, cl. 2; and provisions in collective bargaining agreements contrary to the Act would be superseded. Congressional legislation cannot, however, set aside the laws of foreign countries. When an overseas employer's obligations under foreign law collide with its obligations under the Age Discrimination in Employment Act, § 623(f)(1) quite sensibly solves the dilemma by relieving the employer of liability under the Act.

*American Airlines, Inc. v. Wolens,* — U.S. ——, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), decided after the oral argument in this case, does not alter our decision. The Court there construed a preemption clause in the Airline Deregulation Act of 1978: "[N]o state ... shall enact or enforce any law ... relating to [air carrier] rates, routes, or services." 49 U.S.C. app. § 1305(a)(1). When American Airlines retroactively modified its frequent flyer program, those participating in the program sued in state court claiming that American had violated a state consumer protection statute and had breached its contract with them. The Court held that § 1305(a)(1) preempted the state consumer protection statute but not the state common law enforcing contracts.

As to the common law, the Court said that American's contracts must have legal force because the stability and efficiency of the market depended on the enforcement of agreements. —— U.S. at ——, 115 S.Ct. at 824. But if, because of preemption, the state courts could not invoke common law to enforce American's private contracts, no one could enforce them. The Department of Transportation lacked authority to adjudicate "private contract disputes." *Id.* at ——, 115 S.Ct. at 825. Furthermore, the Federal Aviation Act of 1958, as amended, 49 U.S.C. app. § 1301 *et seq.,* contained a savings clause that had to be squared with the preemption clause. The savings clause preserved "the remedies now existing at common law," 49 U.S.C. app. § 1506. In order to make sense of this provision, and to ensure the continued enforcement of contracts, the Court concluded that the reference to "law" in the preemption clause did not invalidate state contract law. —— U.S. at ——, 115 S.Ct. at 826. The Court distinguished *Norfolk & Western* on the ground that if it interpreted "law" to include "the obligations imposed by contract," as *Norfolk & Western* had interpreted the term, it could not make "sense of the statute as whole." *Id.* at —— n. 6., 115 S.Ct. at 824 n. 6.

Unlike the situation in *American Airlines,* construing the foreign laws exception in the Age Discrimination in Employment Act consistently with *Norfolk & Western* would not render the Act senseless. Just the opposite. That construction agrees with § 623(f)(1)'s evident purpose—to avoid placing overseas employers in the impossible position of having to conform to two inconsistent legal regimes, one imposed from the United States and the other imposed by the country in which the company operates. Moreover, if *American Airlines* had ignored the savings clause and preempted state contract law, it would have created an intolerable system in which private contracts would not be legally enforceable. No such problem is presented here. We recognize that RFE/RL's collective bargaining agreement is legally enforceable, which necessarily means that breaching the agreement in order to comply with the Act would, in the language of § 623(f)(1), "cause" RFE/RL "to violate the laws of" Germany.

Plaintiffs complain that RFE/RL could have bargained harder for a change in the labor contract. But application of § 623(f)(1) does not depend on such considerations. The collective bargaining agreement here was valid and enforceable at the time of plaintiffs' terminations, and RFE/RL had a legal duty to comply with it. There is not, nor could there be, any suggestion that RFE/RL agreed to the mandatory retirement provision in order to evade the Age Discrimination in Employment Act. Such provisions are, the evidence showed, common throughout the Federal Republic of Germany, and RFE/RL entered into this particular agreement before Congress extended the Act beyond our borders.

Because we hold that § 623(f)(1) relieved RFE/RL of liability for terminating plaintiffs, we do not pass on the issue of damages raised in plaintiffs' cross-appeal.

*Reversed.*