

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-17-1997

# Denty v. SmithKline Beecham

Precedential or Non-Precedential:

Docket 96-1554

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Denty v. SmithKline Beecham" (1997). *1997 Decisions*. Paper 63.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/63

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 96-1554
_____

GARLAND DENTY,
                Appellant

                vs.

SMITHKLINE BEECHAM CORPORATION;

(Caption amended per the Clerk's 7/22/96 order)
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 93-cv-06978)
_____

Argued
February 6, 1997
Before:  STAPLETON and MANSMANN, <u>Circuit</u> <u>Judges</u>
and RESTANI, <u>Judge</u>.*

(Filed  March 17, l997)
_____

Ronald H. Surkin, Esquire (ARGUED)
Alexander A. DiSanti, Esquire
Nancy C. DeMis, Esquire
L. Keith Lipman, Esquire
Richard, DiSanti, Gallagher,
Schoenfeld & Surkin
25 West Second Street
P.O. Box 900
Media, PA  19063

        Attorneys for Appellant

Steven B. Feirson, Esquire (ARGUED)
David M. Howard, Esquire
Paul D. Snitzer, Esquire
Dechert, Price & Rhoads
1717 Arch Street
4000 Bell Atlantic Tower
Philadelphia, PA  19103

        Attorneys for Appellee

*        Honorable Jane A. Restani, Judge, United States Court
of International Trade, sitting by designation.

C. Gregory Stewart, Esquire
Gwendolyn Young Reams, Esquire
Carolyn L. Wheeler, Esquire
Robert J. Gregory, Esquire (ARGUED)
Equal Employment Opportunity Commission
1801 L Street, N.W., Room 7032
Washington, DC  10507

          Attorneys for Amicus Curiae – Appellant

_____

OPINION OF THE COURT
_____


MANSMANN, Circuit Judge.

          Before us is the certified question of whether the Age Discrimination in Employment Act and the Pennsylvania Human Relations Act are applicable to the denial of a promotional opportunity based upon age to an individual working in Philadelphia, Pennsylvania, in the employ of a United States subsidiary controlled by a foreign parent corporation not itself controlled by an American corporation, where the promotional opportunity is a position with the foreign corporation outside the United States.  Because we do not believe Congress intended the ADEA should be applied extraterritorially under the facts here, we will affirm the judgment of the district court.


                         I.

          The relevant facts on summary judgment are not disputed.  In 1984, Garland Denty was hired by Smith Kline French, a Pennsylvania corporation, as Director of Quality Assurance.  Denty held this job until January 1989, when he was given the title, Director of Manufacturing Operations/Technical

2

Services, International.  Denty held these positions at Smith

Kline's Philadelphia office.  Smith Kline subsequently merged

with the Beecham Group plc, a British corporation in 1989; the

resulting corporation, SmithKline Beecham plc (SB plc), is

incorporated and headquartered in the United Kingdom.  Denty

continued working for SmithKline Beecham Corporation (SBC), the

wholly-owned American subsidiary of SB plc.

As a consequence of the merger, five new positions were

created with SB plc in foreign locations.  Denty alleges that in

1990, he was told he would be promoted to one of these positions.

Yet, he was subsequently denied the promotion allegedly because

of his age which, at that time, was fifty-two.  Denty further

contends that these positions were filled with men younger than

he.  The promotion decisions were made by SB plc executives in

England while Denty worked for SBC in Philadelphia.

On December 27, 1993, Denty instituted the present

action against SBC,[1] alleging violations of the ADEA and PHRA for

failure to promote, deprivation of employment opportunities, and

age discrimination.  Thereafter, SBC filed a motion for summary

judgment, arguing inter alia that the ADEA did not apply to

Denty's failure-to-promote claim.  The district court granted

summary judgment for SBC on the failure-to-promote claim.  In so

doing, the district court found that the statutory language of

---

1.  The district court considered whether SBC was the proper
defendant.  The court resolved the issue by ruling that it would
allow Denty leave to amend his complaint to name SB plc as a
defendant if it did not rule against him on SBC's summary
judgment motion.  Denty v. SmithKline Beecham Corp., 907 F.Supp.
879, 881-82 (E.D.Pa. 1995).

3

the ADEA, and by extension the PHRA, did not provide for extraterritorial application of the Act against a foreign corporation for failure to promote to positions outside of the United States.  The court specifically ruled that "[t]he relevant work site is the location of [the position for which the plaintiff applied], not the location of Denty's employment at the time of the alleged discrimination."  Denty v. SmithKline Beecham Corp., 907 F.Supp. 879, 884 (E.D. Pa. 1995).  The court further opined that there was no distinction in the ADEA between a "failure to hire" case, in which the discrimination occurs in the country where the job site is located, and a "failure to promote" situation.  Id.  Finally, the district court rejected Denty's contention that SBC and SB plc were indistinguishable and should be considered as a "single employer," holding instead that the proper inquiry was "whether Denty sought employment with an employer `controlled' by an American firm."  Id. at 885.

Denty then moved for certification to allow an immediate appeal pursuant to 28 U.S.C. § 1292(b), which the district court granted on May 10, 1996.  The question certified for appeal is:

> whether the Age Discrimination in Employment Act and the Pennsylvania Human Relations Act are applicable to the denial of a promotional opportunity based upon age to an individual working in Philadelphia, PA, in the employ of a foreign corporation not controlled by an American corporation, where the promotional opportunity is a position with that same foreign corporation outside the United States?

4

Denty petitioned for permission to appeal under 28 U.S.C. § 1292(b) from a certified interlocutory order of the district court.  We granted Denty's motion on June 21, 1996.

We review the district court's grant of summary judgment de novo.  Antol v. Perry, 82 F.3d 1291, 1294-95 (3d Cir. 1996).

## II.

We begin our analysis with the longstanding principle of American law that "legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States."  EEOC v. Arabian American Oil Co., 499 U.S. 244, 248 (1991).  The Supreme Court stated that in applying this rule, courts should determine if the "language in the [relevant Act] gives any indication of a congressional purpose to extend its coverage beyond places over which the United States has sovereignty or has some measure of legislative control."  Id. (quoting Foley Bros., Inc. v. Filardo, 336 U.S. 281, 285 (1949)).  If Congress wishes to go beyond the purely domestic realm, there must be an "affirmative intention . . . clearly expressed."  Id. (quoting Benz v. Compania Naviera Hidalgo, S.A., 353 U.S. 138, 147 (1957).   We turn, therefore, to the plain language of the ADEA.

Codified at 29 U.S.C. § 623(a), the ADEA states in pertinent part:
It shall be unlawful for an employer . . . to fail or
refuse to hire or to discharge any individual
or otherwise discriminate against any
individual with respect to his compensation,

5

> terms, conditions, or privileges of
> employment, because of such individual's
> age[] . . . .

Prior to 1984, the ADEA did not contain any provision addressing extraterritorial reach.  Instead, the ADEA adopted language from the Fair Labor Standards Act, 29 U.S.C. §§ 216(d) and (e), which provided that no "employee whose services during the workweek are performed in a workplace within a foreign country" was protected.  Consequently, we held in Cleary v. United States, 728 F.2d 607, 610 (3d Cir. 1984), that the ADEA could not be applied to Americans employed outside the United States by American employers.

In 1984, Congress responded to Cleary and subsequent cases[2] by amending the ADEA to provide for limited extraterritorial application.  First, Congress amended the definition of "employee" to include "any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country."  29 U.S.C. § 630(f).  Second, Congress enacted the key provision in this case, 29 U.S.C. § 623(h)[3], which states:

**Practices of foreign corporations controlled by American employers; foreign persons not**

---

2.  See, e.g., Lopez v. Pan Am World Services, Inc., 813 F.2d 1118 (11th Cir. 1987); S.F. DeYoreo v. Bell Helicopter Textron, Inc., 785 F.2d 1282 (5th Cir. 1986); Ralis v. RFE/RL, Inc., 770 F.2d 1121 (D.C. Cir. 1985); Pfeiffer v. Wm. Wrigley Jr. Co., 755 F.2d 554 (7th Cir. 1985); Zahourek v. Arthur Young and Co., 750 F.2d 827 (10th Cir. 1984); Thomas v. Brown & Root, Inc., 745 F.2d 279 (4th Cir. 1984).

3.  This subsection was originally codified as 29 U.S.C. § 623(g), creating the incongruity of two subsection "g's."  This mistake was remedied by a 1986 amendment.

**controlled by American employers; factors determining control**

> (1)  If an employer controls a corporation whose place of incorporation is in a foreign country, any practice by such corporation prohibited under this section shall be presumed to be such practice by such employer.
>
> (2)  The prohibitions of this section shall not apply where the employer is a foreign person[4] not controlled by an American employer.
>
> (3)  For the purpose of this subsection the determination of whether an employer controls a corporation shall be based upon the--
> (A)  interrelation of operations,
> (B)  common management,
> (C)  centralized control of labor relations, and
> (D)  common ownership or financial control,

of the employer and the corporation.

As the Supreme Court noted in Arabian, "[t]he expressed purpose of these changes was to `mak[e] provisions of the Act apply to citizens of the United States employed in foreign countries by U.S. corporations or their subsidiaries.'"  499 U.S. at 259 (quoting S. Rep. No. 98-467, at 2 (1984), reprinted in 1984 U.S.C.C.A.N. 2974, 2975).

Viewing the 1984 amendments together, the district court here concluded that the "ADEA applies abroad only when (1) the employee is an American citizen and (2) the employer is controlled by an American employer."  907 F.Supp. at 883.  Our

---

4.  "The term `person' means one or more individuals, partnerships, associations, labor organizations, corporations, business trusts, legal representatives, or any organized group of persons."  29 U.S.C. § 630(a).

reading of the plain language of the statute compels us to agree.[5] The legislative history likewise necessitates this conclusion:

> The purpose behind the amendment is to insure that the citizens of the United States who are employed in a foreign workplace by U.S. corporations or their subsidiaries enjoy the protections of the [ADEA]. When considering this amendment, the Committee was cognizant of the well-established principle of sovereignty, that no nation has the right to impose its labor standards on another country. That is why the amendment is carefully worded to apply only to citizens of the United States who are working for U.S. corporations or their subsidiaries. It does not apply to foreign nationals working for such corporations in a foreign workplace and it does not apply to foreign companies which are not controlled by U.S. firms. Moreover, it is the intent of the Committee that this amendment not be enforced where compliance with its prohibitions would place a U.S. company or its subsidiary in violation of the laws of the host country.[6]

---

5. As the district court noted, the employment decisions at issue involved Denty's application for positions in the United Kingdom and Australia. The relevant work site for ADEA purposes, therefore, is the location of these positions. We find support for this conclusion in the fact that the language of the ADEA does not distinguish between failure to hire and failure to promote situations. Accordingly, we find <u>Lopez v. Pan Am World Servs., Inc.</u>, 813 F.2d 1118 (11th Cir. 1987), indistinguishable from the case before us. Nor does the Tenth Circuit's decision in <u>Zahourek v. Arthur Young and Co.</u>, 750 F.2d 827 (10th Cir. 1984), inform our decision here. There, the court of appeals held that the ADEA did "not apply to the termination of employment of an American citizen by an American employer where, as here, the `workplace' is Honduras." <u>Id.</u> at 828-29 (footnote omitted). The 1984 amendment to the ADEA, without reference to where the discriminatory effect occurred, now specifically protects a person in Zahourek's position: an American citizen working for an American company abroad. Indeed, the focus of the amendment is now upon the degree of control exercised by an American company over the conduct of the discriminating corporation.

6. The Committee codified their intent at 29 U.S.C. § 623(f), which reads in pertinent part:

S. Rep. No. 98-467, at 2, reprinted in 1984 U.S.C.C.A.N. at 3000-01. We emphasize that the job for which Denty applied is in the United Kingdom with the parent company, not in the United States with the subsidiary.

The EEOC guidelines, promulgated in response to the 1984 amendments, do not convince us otherwise. The guidelines provide that "the ADEA does not apply to foreign firms operating outside the United States, unless those firms are controlled by U.S. employers. On the other hand, the ADEA does apply to foreign firms operating on U.S. soil." EEOC Policy Guidance, N-915.039, Empl. Prac. Guide (CCH) 5183, 6531 (March 3, 1989). Here the record is clear that Denty is currently employed by a U.S. subsidiary of a British parent corporation. SB plc controls the American subsidiary, not the other way around. Clearly, then, the ADEA cannot be applied extraterritorially to create liability on the part of SB plc given the facts of this case.

We reject the EEOC's argument that by failing to apply the ADEA extraterritorially here, Denty will fall into a "black hole." To the contrary, Denty does not fall into a "black hole"-

(..continued)
It shall not be unlawful for an employer . . . to take any action otherwise prohibited under subsection[] (a) . . . where such practices involve an employee in a workplace in a foreign country, and compliance with such subsection[] would cause such employer, or a corporation controlled by such employer, to violate the laws of the country in which such workplace is located[.]

This section has been commonly referred to as the "foreign law exception."

9

–he is protected by British law. The fact that British law does not protect individuals forty years of age or older from discrimination is not our concern. Moreover, Congress considered the possibility of a "black hole" and yet chose not to extend the ADEA, recognizing the well-established principle of sovereignty. The EEOC's argument, thus, misses the mark.

The language of section 623(h)(2) could not be more clear--the ADEA does not apply when a foreign corporation controls an American corporation and the employment is with the foreign parent abroad. Accordingly, we will affirm the judgment of the district court.[7]

---

7. Denty's failure-to-promote claim under the Pennsylvania Human Relations Act (PHRA) must likewise be dismissed as no evidence exists to show the Pennsylvania legislature intended to apply the PHRA to employment decisions made by foreign corporations for positions located outside the United States.