Filed:  June 15, 2001

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

─────────────

No. 00-1963
(CA-00-93-1)

─────────────

Luis Reyes-Gaona,

Plaintiff - Appellant,

versus

North Carolina Growers Association, etc., et
al.,

Defendants - Appellees.

─────────────

O R D E R

─────────────

The court amends its opinion filed May 22, 2001, as follows:

On page 2, section 1, line 6 -- Ms. Anderson's name is deleted from section 1, line 11, and added to counsel arguing for appellees as "Margaret Ann Anderson, Pilot Mountain, North Carolina."

For the Court - By Direction

                                    /s/ Patricia S. Connor
                                              Clerk

PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

LUIS REYES-GAONA,
Plaintiff-Appellant,

v.

NORTH CAROLINA GROWERS
ASSOCIATION, INCORPORATED; DEL-AL

ASSOCIATES, INCORPORATED,
Defendants-Appellees.

FARM LABOR ORGANIZING COMMITTEE,
AFL-CIO; EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Amici Curiae.

No. 00-1963

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
N. Carlton Tilley, Jr., Chief District Judge.
(CA-00-93-1)

Argued: April 5, 2001

Decided: May 22, 2001

Before WILKINSON, Chief Judge, MOTZ, Circuit Judge, and
Patrick M. DUFFY, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Duffy joined. Judge Motz wrote an opinion
concurring in the judgment.

_____

**COUNSEL**

**ARGUED:** Laurie Ann McCann, AARP FOUNDATION LITIGA-
TION, Washington, D.C., for Appellant. Robert John Gregory, Senior
Attorney, EQUAL EMPLOYMENT OPPORTUNITY COMMIS-
SION, Washington, D.C., for Amicus Curiae Commission. Virginia
A. Piekarski, CONSTANGY, BROOKS & SMITH, L.L.C., Winston-
Salem, North Carolina; Margaret Ann Anderson, Pilot Mountain,
North Carolina, for Appellees. **ON BRIEF:** Pamela DiSte-
fano, DISTEFANO & ERCA, Durham, North Carolina; Bruce Gold-
stein, Shelley Davis, FARMWORKER JUSTICE FUND, INC.,
Washington, D.C., for Appellant. W. R. Loftis, Jr., CONSTANGY,
BROOKS & SMITH, L.L.C., Winston-Salem, North Carolina, for
Appellee Growers Association. C. Gregory Stewart,
General Counsel, Philip B. Sklover, Associate General Counsel, Lor-
raine C. Davis, Assistant General Counsel, EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, Washington, D.C., for Amicus
Curiae Commission. Herman Schwartz, WASHINGTON COLLEGE
OF LAW AMERICAN UNIVERSITY, Washington, D.C., for
Amicus Curiae Committee.

_____

**OPINION**

WILKINSON, Chief Judge:

This case requires us to decide whether the Age Discrimination in
Employment Act (ADEA) covers foreign nationals who apply in for-
eign countries for jobs in the United States. We hold that the Act does
not cover such persons. We thereby affirm the judgment of the district
court, albeit on different grounds.

I.

Plaintiff Luis Reyes-Gaona is a Mexican national over the age of
40. Defendant North Carolina Growers Association (NCGA) is an
American corporation that assists agricultural businesses in North
Carolina in securing farm labor through the federal H-2A agricultural
worker program.[1] Defendant Del-Al is an agent of NCGA that recruits

_____

[1] Agricultural employers who anticipate a labor shortage for temporary
or seasonal jobs may petition the government for permission to employ

2

H-2A workers for NCGA and its members. In May 1998, Reyes-Gaona went to a Del-Al office in Mexico and asked to be placed on a list of workers seeking employment in North Carolina via the H-2A program. Del-Al told Reyes-Gaona that NCGA would not accept workers over forty years old unless that person had worked for NCGA before. Reyes-Gaona filed suit against NCGA and Del-Al, alleging age discrimination in violation of the ADEA.

As the district court noted, an ADEA plaintiff must prove, <u>inter alia</u>, that he was qualified for the job he sought. Under Fourth Circuit precedent, for a foreign national to be "qualified" for a position, he must be authorized for employment in the United States at the time in question. <u>See Egbuna v. Time-Life Libraries, Inc.</u>, 153 F.3d 184, 187 (4th Cir. 1998) (en banc) (per curiam). The district court granted defendants' Rule 12(b)(6) motion to dismiss because it was undisputed that Reyes-Gaona was not authorized to work in the United States at the time he sought employment with NCGA. In reaching this decision, the district court declined to address the threshold argument that the presumption against extraterritoriality barred the application of the ADEA to this case. Reyes-Gaona appeals.

II.

Plaintiff is a foreign national who applied in a foreign country for work in the United States. Accordingly, we begin, as we must, by acknowledging the "longstanding principle of American law `that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" <u>EEOC v. Arabian American Oil Co.</u>, 499 U.S. 244, 248 (1991) (<u>quoting Foley Bros., Inc. v. Filardo</u>, 336 U.S. 281, 285 (1949)). This interpretive canon is an especially important one as it "serves to protect against unintended clashes between our laws and those of other

_____

foreign workers on a temporary basis pursuant to the H-2A visa program. 8 U.S.C. § 1101(a)(15)(H)(ii)(a). Before the Immigration and Naturalization Service will approve an application, the employer must certify that there is a domestic labor shortage and that employing foreign workers will not adversely affect the wages and working conditions of similarly employed American workers. <u>Id.</u> § 1188(a)(1).

3

nations which could result in international discord." Id. Thus, the presumption against extraterritorial application of a federal statute can be overcome only if there is an "affirmative intention of the Congress clearly expressed." Id. (quoting Benz v. Compania Naviera Hidalgo, S.A., 353 U.S. 138, 147 (1957)). Since this determination is necessarily "a matter of statutory construction," Arabian, 499 U.S. at 248, we begin with the text of the ADEA itself.

The ADEA makes it unlawful "for an employer" to "fail or refuse to hire" or "otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The term "employer" means any company "engaged in an industry affecting commerce who has twenty or more employees" and includes the agents of such companies. Id. § 630(b). The term "employee" means "an individual employed by any employer," and "includes any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country." Id. § 630(f). Prior to 1984, the ADEA did not contain the language regarding U.S. citizens employed in foreign workplaces. To the contrary, Section 626(b) adopted language from the Fair Labor Standards Act (FLSA) excluding from coverage any individual "whose services during the workweek are performed in a workplace within a foreign country." Id. § 213(f).

Based on the exclusionary language adopted from the FLSA, many courts held that, before 1984, the ADEA had a purely domestic focus and did not cover American citizens working for American companies in foreign countries. See, e.g., Thomas v. Brown & Root, Inc., 745 F.2d 279, 281 (4th Cir. 1984) (per curiam). **2** The presumption against the extraterritorial application of American laws required this

_____

**2** Six other circuits reached the same conclusion. And although many of these decisions were handed down after 1984, each involved events that preceded the enactment of the 1984 amendments. See Lopez v. Pan Am World Services, Inc., 813 F.2d 1118 (11th Cir. 1987); S.F. DeYoreo v. Bell Helicopter Textron, Inc., 785 F.2d 1282 (5th Cir. 1986); Ralis v. RFE/RL, Inc., 770 F.2d 1121 (D.C. Cir. 1985); Pfeiffer v. Wm. Wrigley Jr. Co., 755 F.2d 554 (7th Cir. 1985); Zahourek v. Arthur Young & Co., 750 F.2d 827 (10th Cir. 1984); Cleary v. U.S. Lines, Inc., 728 F.2d 607 (3d Cir. 1984).

result because absent a clear statement from Congress, the scope of American law is limited to "the territorial jurisdiction of the United States." <u>Arabian</u>, 499 U.S. at 244. Thus the presumption prevented the ADEA from regulating events taking place in foreign countries even when they involved citizens of the United States. And the Act certainly could not have reached the even more attenuated situation of a foreign national applying in a foreign country for work in the United States.

In 1984, Congress partially closed this gap. Congress responded to the <u>Thomas</u> line of cases by amending the ADEA to give it limited extraterritorial application. The definition of "employee" was amended to include "any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country." 29 U.S.C. § 630(f). This new statutory language explicitly expanded the ADEA to prohibit U.S. companies from discriminating against U.S. citizens employed in foreign countries. Congress also included an accompanying provision outlawing such discrimination by subsidiaries of U.S. corporations. <u>See id.</u> § 623(h). The language was "carefully worded to apply only to citizens of the United States" who worked for a U.S. company or its subsidiary because Congress recognized that the "well-established principle of sovereignty" prohibited the United States from imposing "its labor standards on another country." <u>Denty v. SmithKline Beecham Corp.</u>, 109 F.3d 147, 150 (3d Cir. 1997) (<u>quoting</u> S. Rep. No. 98-467, at 27 (1984), <u>reprinted in</u> 1984 U.S.C.C.A.N. 2974, 3000).

These amendments demonstrated that "when it desires to do so, Congress knows how to" expand "the jurisdictional reach of a statute." <u>Arabian</u>, 499 U.S. at 258. According to the <u>Arabian</u> Court, "after several courts had held that the ADEA did not apply overseas" Congress enacted a set of changes whose "expressed purpose . . . was to make `provisions of the Act apply to citizens of the United States employed in foreign countries by U.S. corporations or their subsidiaries.'" <u>Id.</u> at 259 (<u>quoting</u> S. Rep. No. 98-467, at 2 (1984)). Notably missing from the 1984 amendments, however, is any provision regulating the conduct at issue here. Congress explicitly gave the ADEA extraterritorial application with respect to certain U.S. citizens while simultaneously declining to extend coverage to foreign nationals like Reyes-Gaona. Nothing in the amendments regulates age discrimina-

5

tion by U.S. corporations against foreign nationals in foreign countries. And the doctrine of expressio unis est exclusio alterius instructs that where a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded. Indeed, neither Reyes-Gaona nor the Equal Employment Opportunity Commission (EEOC) cites a case, and we can find none ourselves, where the ADEA was interpreted to reach a situation analogous to the case at bar. Thus, a faithful reading of the plain text of the statute, especially in light of the 1984 amendments, compels the conclusion that Reyes-Gaona's claim is not sustainable under the ADEA.

Reyes-Gaona and the EEOC disagree. They claim that this case does not require extraterritorial application of the ADEA because the job Reyes-Gaona applied for was in the United States.[3] The crux of their argument is that when determining whether a suit requires extraterritorial application of the ADEA, courts always look to the place of employment rather than the place where the decision was made. Because Reyes-Gaona applied for a job in the United States, they argue, the presumption against extraterritoriality is not implicated by this suit. In support they note that the ADEA itself contains the term "workplace." For example, "employee" is defined to include U.S. citizens employed "in a workplace in a foreign country." 29 U.S.C. § 630(f) (emphasis added). And the Act excepts from its reach employees "in a workplace in a foreign country" where compliance would conflict with the laws of the country "in which such workplace is located." Id. § 623(f)(1) (emphasis added).

We are not persuaded. All of these statutory references come from the 1984 amendments to the ADEA which, as previously explained, do not cover Reyes-Gaona. Nothing in the ADEA provides that it shall apply anytime the workplace is in the United States regardless of the nationality of the applicant or the country in which the applica-

_____

[3] Reyes-Gaona separately claims that the issue of extraterritoriality is not properly before this court because the district court did not address the issue below. This is wrong. It is axiomatic that "we may affirm the dismissal by the district court on the basis of any ground supported by the record even if it is not the basis relied upon by the district court." Ostrzenski v. Seigel, 177 F.3d 245, 253 (4th Cir. 1999).

6

tion was submitted. And the fact that the 1984 amendments refer to workplace does not mean that the Act focuses on work situs to the exclusion of the situs of the application or the nationality of the applicant. Indeed, the EEOC is insisting that the presumption against extraterritoriality has no applicability even when a foreign national submits a job application in a foreign country.

In addition to its statutory argument, the EEOC cites various decisions from the Thomas line of cases, see supra n.2, all of which involved events that preceded the 1984 amendments. The EEOC claims these cases prove that courts look to the employee's actual or proposed work situs to determine whether the ADEA is being applied in an extraterritorial manner. This is not, however, what these cases demonstrate. As discussed above, the Thomas line of cases stands for the rather unremarkable proposition that before 1984 the ADEA had no extraterritorial application at all -- not even for U.S. citizens working abroad for American companies. The fact that some suits were barred because of the international location of the employee's workstation says nothing about whether a foreign national can file suit under the ADEA merely because the proposed workstation is in the United States.

The simple submission of a resume abroad does not confer the right to file an ADEA action. Indeed, such a broad reading of the Act could have staggering consequences for American companies. Expanding the ADEA to cover millions of foreign nationals who file an overseas application for U.S. employment could exponentially increase the number of suits filed and result in substantial litigation costs. If such a step is to be taken, it must be taken via a clear and unambiguous statement from Congress rather than by judicial fiat.

III.

The Supreme Court has instructed the lower courts to take seriously the presumption against extraterritorial application of U.S. laws. In keeping with these instructions, many lower courts, including this one, held that the ADEA had no extraterritorial application prior to 1984. Congress responded by amending the Act to provide for limited extraterritorial reach. Since these amendments do not reach the case at bar, there remains nothing in the text of the ADEA to rebut the pre-

7

sumption against extending it to cover Reyes-Gaona. And the limited nature of the 1984 amendments indicates that foreign nationals in foreign countries are not covered by the ADEA, regardless of whether they are seeking employment in the United States or elsewhere.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

DIANA GRIBBON MOTZ, Circuit Judge, concurring in the judgment:

I concur in the judgment because I agree that no authority compels application of the ADEA to a situation, like that here, in which a foreign national applies in his home country for a job in the United States.

In support of their contention that they are not requesting extraterritorial application of the ADEA, Luis Reyes-Gaona and the EEOC rely on several cases in which courts have denied, on extraterritoriality grounds, the ADEA claims of legal aliens who applied in the United States for work abroad. See Hu v. Skadden, Arps, Slate, Meagher & Flom LLP, 76 F. Supp. 2d 476, 477 (S.D.N.Y. 1999) ("Although Hu conducted his job search in the United States, the employment he sought was to be performed outside the country. The fact that Skadden conducted employment interviews in New York and may have made hiring decisions in New York does not suffice to render the employment within the United States for ADEA purposes."); see also Denty v. SmithKline Beecham Corp., 109 F.3d 147, 150 n.5 (3rd Cir. 1997) (denying claim of legal alien who applied in the United States for a position abroad on the ground that the place where the job is to be performed constitutes the location of the work site for ADEA purposes).

Reyes-Gaona and the EEOC argue that these authorities stand for the principle that courts look to the place of employment, not the place of the job application, in determining whether the ADEA reaches a given claim, or whether permitting the claim would require the extraterritorial application of the statute. In the case at hand, they

8

maintain that the place of employment is the United States, so the ADEA applies to Reyes-Gaona's claim.

The authorities cited by Reyes-Gaona and the EEOC, however, do not present the same situation as this case; indeed, they present the reverse situation. Whereas the case at hand involves a foreign national applying outside the country for a position in the United States, those cases involved a foreign national applying in the United States for a position outside the country. The fact that the ADEA did <u>not</u> apply in those cases does not compel the conclusion that it <u>does</u> apply to this one. For this reason, I join in the judgment.

I emphasize that the decision reached by the court in this case does not conflict with the generally accepted principle that statutes affording protection from employment discrimination, such as Title VII and the ADEA, apply to foreign nationals who are legally employed in the United States. <u>See Espinoza v. Farah Mfg. Co.</u>, 414 U.S. 86, 95 (1973) ("We agree that aliens are protected under[Title VII]."); <u>Boureslan v. Aramco, Arabian American Oil Co.</u>, 892 F.2d 1271, 1273 (5th Cir. 1990) (holding that Congress intended to "provide Title VII coverage to aliens employed <u>within</u> the United States"); <u>O'Loughlin v. The Pritchard Corp.</u>, 972 F. Supp. 1352, 1363-64 (D. Kan. 1997) (The ADEA "in general protects noncitizens of the United States from unlawful discrimination."). Had Reyes-Gaona been hired by NGCA, once he began work in this country, the ADEA would have protected him from unlawful employment discrimination.

9